UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In the Matter of

      EXTENDED STAY INC. et al.,

FIVE MILE CAPITAL II SPE ESH LLC,

           Plaintiff-Appellant,

    -against-

CERBERUS CAPITAL MANAGEMENT et al.,

           Defendants-Appellees.

BANK OF AMERICA, N.A. et al,,

           Plaintiffs-Appellees,

    -against-

LIGHTSTONE HOLDINGS et al.,

           Defendants-Appellants.

LINE TRUST CORPORATION LTD et al.,

           Plaintiffs-Appellees,

    -against-

LICHTENSTEIN et al.,

           Defendants-Appellants.

Chapter 11
Case No. 09-13764 (JMP)
(Bankr. S.D.N.Y.)

Nos.   09 Civ 9196 (LTS)
       09 Civ. 9197 (LTS)

Nos.   09 Civ. 9507 (LTS)
       09 Civ. 9749 (LTS)

Nos.   09 Civ. 9508 (LTS)
       09 Civ. 9731 (LTS)
       09 Civ. 9750 (LTS)

APPEARANCES:

GOLENBOCK EISEMAN ASSOR
BELL & PESKOE LLP
    By:  Jeffrey T. Golenbock, Esq.
         Douglas L. Furth, Esq.
         Michael S. Weinstein, Esq.
437 Madison Avenue
New York, NY 10022
*Attorneys for Five Mile Capital II SPE*
*ESH LLC*

SCHULTE ROTH & ZABEL LLP
    By:  Howard Owen Godnick, Esq.
         Adam Harris, Esq.
         Michael G. Cutini, Esq.
919 Third Avenue
New York, NY 10022
*Attorneys for Cerberus Capital*
*Management, L.P.*

FRIED, FRANK, HARRIS,
SHRIVER & JACOBSON LLP
    By: Gregg L. Weiner, Esq.
         Bonnie K. Steingart, Esq.
One New York Plaza
New York, NY 10004
*Attorneys for Centerbridge Partners, L.P.*

WEIL, GOTSHAL & MANGES LLP
    By:  Howard B. Comet, Esq.
         Jacqueline Marcus, Esq.
767 Fifth Avenue
New York, NY 10153
*Attorneys for Extended Stay Inc., et al.*

KASOWITZ, BENSON, TORRES &
FRIEDMAN LLP
    By:  David M. Friedman, Esq.
         Christopher Paul Johnson, Esq.
         Adina Giselle Storch, Esq.
1633 Broadway
New York, NY 10019
*Attorneys for David Lichtenstein and*
*Lightstone Holdings, LLC*

KAYE SCHOLER LLP
    By:  H. Peter Haveles, Jr., Esq.
425 Park Avenue
New York, NY 10022
*Attorneys for Bank of America, N.A. and*
*Merrill Lynch Mortgage Lending, Inc.*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP
    By:  Howard S. Zelbo, Esq.
One Liberty Plaza
New York, NY 10006
*Attorneys for U.S. Bank National Association*
*as Trustee of the Maiden Lane Commercial*
*Mortgage Backed Securities Trust 2008-1*

MORRISON & FOERSTER LLP
    By: James E. Hough, Esq.
         Rachel M. Wertheimer, Esq.
1290 Avenue of the Americas
New York, NY 10104
*Attorneys for Wachovia Bank, N.A.*

APPEARANCES (CONTINUED):

KRAMER, LEVIN, NAFTALIS &
FRANKEL LLP
   By: Timothy P. Harkness, Esq.
1177 Avenue of the Americas
New York, NY 10036
*Attorneys for Debt II ESH, L.P. and*
*Debt-U ESH, L.P.*


BUCHANAN INGERSOLL &
ROONEY P.C.
   By: Peter Stephen Russ, Esq.
620 Eighth Avenue
New York, NY 10018
*Attorneys for KeyBank National Association*

MEISTER SEELIG & FEIN LLP
   By: Stephen Bruce Meister, Esq.
      Stacey M. Ashby, Esq.
      Lawrence F. Morrison, Esq.
      Sarit Shmulevitz, Esq.
2 Grand Central Tower
140 East 45th Street
New York, NY 10017
*Attorneys for Line Trust Corporation Ltd. and*
*Deuce Properties, Ltd.*

LAURA TAYLOR SWAIN, UNITED STATES DISTRICT JUDGE:

OPINION AND ORDER

These seven related appeals are taken from orders and a Memorandum Decision entered on October 7, 2009, in the United States Bankruptcy Court for the Southern District of New York (Peck, B.J.) denying a motion to remand one of three related adversary proceedings, granting the debtors' motion to intervene in that adversary proceeding and granting motions to remand the other two adversary proceedings (collectively the "Bankruptcy Court Decision").  All three adversary proceedings were originally commenced in the Supreme Court for the State of New York, New York County, removed pursuant to 28 U.S.C. §1452 to this Court and referred to the Bankruptcy Court pursuant to 28 U.S.C. §157 and this Court's July 10, 1984, standing Order of Reference for bankruptcy cases and proceedings, in connection with the pending jointly administered Chapter 11 cases of Extended Stay Inc. and its affiliates (collectively, "Extended Stay" or "Debtors").  The Court has jurisdiction of these appeals pursuant to 28 U.S.C. §158(a)(1), and has reviewed thoroughly the parties' extensive submissions.   Familiarity with those submissions and with the designated portions of the Bankruptcy Court record is presumed. For the reasons that follow, the Bankruptcy Court Decision is affirmed.

BACKGROUND AND PROCEDURAL HISTORY

In June 2007, Extended Stay, the largest owner/operator of mid-priced hotels in the United States, was acquired by an investor consortium led by Appellant David Lichtenstein ("Lichtenstein") and his portfolio company Appellant Lightstone Holdings ("Lightstone").  The acquisition was financed through loans totaling approximately $7.4 billion, comprising a mortgage loan of approximately $4.1 billion and ten tranches, denominated A through J, of junior

Mezzanine Loans totaling approximately $3.3 billion.  The mortgage loan was sold to a trust formed pursuant to a Trust and Servicing Agreement (the "Mortgage Trust" and the "TSA," respectively).  The Mortgage Trust issued 18 principal classes of certificates representing beneficial interests in the trust and the mortgage loan collateral ("Certificates"), each with a different level of priority on which its entitlement to distributions from the Mortgage Trust is based.  Appellant Five Mile Capital II SPE ESH LLC ("Five Mile Capital" or "Five Mile") and appellees Cerberus Capital Management, L.P. ("Cerberus"), and Centerbridge Partners, L.P. ("Centerbridge") are among the Certificate holders.  Cerberus and Centerbridge hold Certificates from classes senior to those held by Five Mile Capital.

Certain of the Mezzanine Loans were securitized into debt corresponding to the various tranches.  Appellee Line Trust Corporation LTD ("Line Trust") purchased debt corresponding to tranche G, and Appellee Bank of America, N.A., which was also one of the original Mezzanine lenders, purchased debt corresponding to tranches A through E.

The financing arrangements included measures designed to minimize the potential for a bankruptcy filing on the part of Extended Stay.  Among these measures, and at issue in the Bank of America and Line Trust adversary proceedings, were provisions under which the Mortgage and Mezzanine Loans were non-recourse except upon the occurrence of an event of default.  Guarantees delivered by Lichtenstein, Lightstone and certain others of up to $100 million of the debt (sometimes referred to by the parties as "non-recourse carve-out guarantees") were similarly conditioned upon the occurrence of an event of default.  Among the triggering events of default, or "bad boy" occurrences, was the filing of a voluntary bankruptcy petition by Extended Stay.  The parties sometimes refer to these liabilities arising upon the occurrence of an

event of default as "springing" liabilities.  The guarantees define the guarantors' joint and several liability by reference to the Debtors' liability under the recourse provisions of the financing instruments – in other words, the guarantors' obligation is to satisfy a liability of the Debtors that comes into existence upon, <u>inter alia</u>, a bankruptcy filing.  The financing documents, which include the guarantees and an Intercreditor Agreement, also provide for guarantor liability notwithstanding unenforceability of the recourse provisions against the Debtors, waiver of any claim for indemnity of the guarantors by the Debtors in connection with the guarantees, and indemnity of the lenders for expenses in connection with enforcement of the guarantees.

Extended Stay encountered financial difficulties and engaged in negotiations with certain groups of its lenders, including Certificate holders Cerberus and Centerbridge, and Mezzanine debt holder Line Trust.  Consummation of an out-of-court restructuring arrangement with certain senior Mezzanine debt holders was thwarted by state court litigation commenced by Line Trust, which had been party to a competing restructuring proposal and, on June 13, 2009, the Debtors filed voluntary petitions pursuant to Chapter 11 of the Bankruptcy Code.[1]  The Debtors' bankruptcy petitions were accompanied by a term sheet outlining a potential plan of reorganization pursuant to which certain of the Certificate holders' positions would improve significantly; junior Certificate holders like Five Mile would be disadvantaged; Bank of America in its Mezzanine debt holder capacity, Line Trust, and their fellow junior Mezzanine debt holders would be out of the money; and Lichtenstein and Lightstone would be indemnified by the Debtors for liabilities they incur under the guarantees as well as for certain litigation expenses

---

[1] Line Trust's initial state court proceeding was dismissed voluntarily in light of the bankruptcy filing.

relating to the guarantees.  The three cases that are the subjects of these appeals were commenced

shortly thereafter in state court, removed to this Court, and referred to the Bankruptcy Court as

adversary proceedings.  Following the interposition of motions to remand the proceedings, and

motions by Extended Stay to intervene in each of the adversary proceedings, the Bankruptcy

Court held hearings on September 10 and September 22, 2009, and, on October 7, 2009, issued

the orders and Memorandum Decision that are appealed from here.

DISCUSSION

Appellants challenge the Bankruptcy Court's conclusions as to whether there is

federal court jurisdiction of the claims asserted in the three adversary proceedings that were

initiated in state court.  All of plaintiffs' claims in those cases were pleaded as state contract or

tort causes of action; the cases were removed pursuant to notices of removal invoking the Court's

bankruptcy jurisdiction under 28 U.S.C. §1334(b).

On appeal, legal determinations of the bankruptcy court are reviewed de novo.

the bankruptcy court's findings of fact will not be set aside unless they are clearly erroneous.

Ames Dep't Stores, Inc. v. ASM Capital, LP, 582 F.3d 422, 427 (2d Cir. 2009), cert. denied, ___

U.S. ____, 130 S. Ct. 1527 (2010); Fed. R. Bankr. P. 8013.

28 U.S.C. section 1334 provides in pertinent part that district courts have original

but not exclusive jurisdiction of "all civil proceedings arising under title 11 [(the Bankruptcy

Code)], or arising in or related to cases under title 11."  28 U.S.C.A. §1334(b) (West 2006).

Cases "arising under" title 11 or "arising in" a title 11 case are "core" proceedings that may be

heard and determined by bankruptcy courts, subject to appellate review by the district courts.

Such core proceedings include "matters concerning the administration of the estate" and plan

confirmations.  28 U.S.C.A. §157(b)(2)(A), (L) (West 2006).  The bankruptcy court has

jurisdiction only to hear and (unless the parties consent to determination of the matters by the

bankruptcy court) propose findings of fact and conclusions of law to the district court with

respect to matters that are merely "related to" title 11 bankruptcy cases.  28 U.S.C.A. §157(c)(1)

(West 2006).  The determination as to whether a matter is "related to" a pending bankruptcy case

turns on "whether its outcome might have any 'conceivable effect' on the bankrupt estate . . . [;]

'any significant connection' with the bankrupt estate . . . would [also] establish §1334(b)

jurisdiction."  Publicker Ind. Inc. v. U.S. (In re Cuyahoga Equip. Corp.), 980 F.2d 110, 114 (2d

Cir. 1992) (citations omitted).

*Five Mile Capital v. Cerberus Adversary Proceeding*

        The Bankruptcy Court denied the motion to remand this adversary proceeding,

and granted Extended Stay's motion to intervene in the adversary proceeding.  Plaintiff-appellant

Five Mile Capital, a Certificate holder, seeks damages, declaratory and injunctive relief against

Cerberus and Centerbridge, claiming that Defendants-Appellees breached the TSA by negotiating

directly with the Debtors prior to the bankruptcy filings over the contours of a potential plan of

reorganization.  Five Mile contends that the TSA makes certain "Servicers" appointed pursuant

to that document the exclusive representative of all of the Certificate holders for such purposes.

Appellants moved to remand the action, arguing principally that the Bankruptcy Court lacked

jurisdiction of the adversary proceeding because it presented state contract claims involving only

the rights and liabilities of the Certificate holders inter se.  Appellee Extended Stay, whose

intervention motion the Bankruptcy Court granted, opposed the motion to remand, joining the

other Appellees' arguments that the action was within the core jurisdiction of the bankruptcy

court because of the potential impact of the relief sought on Extended Stay's efforts to reorganize.

The Bankruptcy Court denied the motion to remand, holding in its Memorandum Decision that

the "close interconnection between the issues raised by the action and the bankruptcy process

overwhelmingly renders th[e] dispute core."  In re Extended Stay Inc., 418 B.R. 49, 57 (Bankr.

S.D.N.Y. 2009).  Having reviewed the issues de novo, this Court concurs.

> [W]hether a contract proceeding is core depends on (1) whether
> the contract is antecedent to the reorganization petition; and (2)
> the degree to which the proceeding is independent of the
> reorganization.  The latter inquiry hinges on 'the nature of the
> proceeding.'  In re S.G. Phillips Constructors, Inc., 45 F.3d [702]
> at 707 [(2d Cir. 1995)].  Proceedings can be core by virtue of
> their nature if either (1) the type of proceeding is unique to or
> uniquely affected by the bankruptcy proceedings, . . . or (2) the
> proceedings directly affect a core bankruptcy function . . . .

In re United States Lines, Inc., 197 F.3d 631, 637 (2d Cir. 1999).  Here, although the dispute as

plead in state court focuses on the rights and obligations of the parties to a pre-petition contract

under the terms of that document, Five Mile's efforts to prevent the Debtors from pursuing

ongoing post-filing negotiations in their reorganization proceeding clearly implicate the core

bankruptcy function of estate administration, particularly plan formulation.  Debtors' devotion of

time and estate resources to the negotiations with the Defendant-Appellees could be rendered, at

best, inefficient and, at worst, wasteful, if Five Mile were to prevail in the adversary proceeding.

Debtors' interest in the outcome of the litigation also warranted the granting of their motion to

intervene.  Accordingly, the Bankruptcy Court's Order and Memorandum Decision are affirmed

insofar as they relate to in matters 09 Civ. 9196 and 09 Civ.  9197.

*Bank of America, N.A. v. Lightstone and Lichtenstein*

       Plaintiff-Appellees Bank of America, N.A., et al. (collectively, "Bank of

America") commenced this action in New York State Supreme Court on June 16, 2009, seeking to enforce non-recourse carve-out guarantees delivered by Defendant-Appellants Lightstone and Lichtenstein in connection with the Mezzanine Loan financing.  Lightstone and Lichtenstein removed the action on July 8, 2009.  No Debtor was named as a party to the action.  The Bankruptcy Court granted Bank of America's motion to remand the action in the October 7, 2009, Bankruptcy Court Decision, finding no core jurisdiction and that the claims asserted were not "related to" the Extended Stay bankruptcy proceedings because the resolution of plaintiffs' claims could have no conceivable effect on the Debtors' estate.

The primarily relevant features of the guarantees in question are that they came into play (or "sprang" into effect) upon the Debtors' bankruptcy filing, and did so based on a recourse liability of Debtors that was likewise tied to the "bad boy" act of filing for bankruptcy. Prior to that filing, the loans were non-recourse as to Debtors and the guarantees secured no underlying non-contingent obligation.  Appellants characterize the guarantees and underlying Debtor liabilities as penalties tied to the bankruptcy filing and, citing decisions holding that damages actions or state law penalty provisions based on bankruptcy filings or actions taken within bankruptcy cases are preempted by the Bankruptcy Code, argue that the causes of action based upon the guarantees are completely preempted (and also precluded) by the Code, and that they necessarily "arise under" the Code by virtue of such preemption. In a similar vein, Appellants argue that the guarantees are unenforceable because the underlying provision for debtor liability triggered by the bankruptcy filing constitutes an "ipso facto" clause that is rendered unenforceable by public policy if not by specific Bankruptcy Code provisions, and that the guarantees so disincentivize the exercise of rights under the Bankruptcy Code as to amount to

prohibited waivers of Bankruptcy Code rights.  Appellants further argue that the guarantee claims

"arise in" Debtors' bankruptcy case because they are derivative of Debtor liabilities that arose

only because of Debtors' bankruptcy filings.  Finally, Appellants contend that the Bankruptcy

Court erred in finding that the guarantee claims are not "related to" Debtors' bankruptcies

because they could have no conceivable effect thereon, asserting that Appellees have the right to

claim indemnification from the Debtors for the expense of the guaranty-related litigation, and

that any recovery on the guarantees could have an effect on the amounts of distributions from the

estate because of compensating adjustment provisions in the Intercreditor Agreement.

       Appellants rely principally on Astor Holdings, Inc. v. Roski, 325 F. Supp. 2d 251

(S.D.N.Y. 2003), in which the district court held that the Code preempted a post-bankruptcy tort

law damages action against a third party premised on claims that the third party had induced the

debtor to breach a contract and fiduciary duties by filing a bankruptcy case in bad faith or for an

improper purpose.  The district court granted summary judgment to the defendant on those

issues.  Id., 325 F. Supp. 2d at 263, 270.  The Astor Holdings plaintiff's litany of allegedly

procured breaches of a joint venture agreement included "fil[ing] for bankruptcy in an effort to

divest [plaintiff] of its interest in the Robot Wars business" that was at issue in the case.  Id. at

260.  The plaintiff claimed that the third party had also induced the third party to breach his

fiduciary duties to the joint venture by filing the bankruptcy, seeking to reject the joint venture

agreement and taking other actions within the bankruptcy "'with the purpose of "divest[ing]

plaintiff] of its interest in Robot Wars,'" and claiming sole ownership of a trademark before the

bankruptcy court.  Id.  In concluding that "[t]he claims . . . .requiring a finding that [the third

party] filed for bankruptcy or filed certain papers in the bankruptcy proceedings in bad faith or

for an improper purpose, as measured by the standards of New York tort law' are . . . barred," the
Astor Holdings Court relied upon a broad principle of preemption that it found expressed in the
Second Circuit's decision in Eastern Equip. & Services Corp. v. Factory Point Nat'l Bank, 236
F.3d 117 (2d Cir. 2001).  Astor Holdings, 325 F. Supp. 2d at 262-63.[2]

       In Eastern Equipment, the Second Circuit held that the Bankruptcy Code's
provision for the automatic stay of state proceedings against the debtor (see 11 U.S.C. §362(a))
preempted state law-based claims for damages for alleged violation of the automatic stay that
were asserted in federal district court.  Id., 236 F.3d at 120-21.  The court held that even the
district court lacked jurisdiction to entertain the purported state law claim, and that any such
claim, as well as any claim under the Bankruptcy Code's specific provision for damages for
willful violations of the stay, could be brought in bankruptcy court only.  Id. at 121.[3]  The Eastern
Equipment Court cited with approval the Ninth Circuit's decision in MSR Exploration, Ltd. v.
Meridian Oil, Inc., 74 F.3d 910, 913-16 (9th Cir. 1996).  There, the Ninth Circuit held that a state
law malicious prosecution action, separate from a prior bankruptcy proceeding but concerning a
claim that had been asserted in the bankruptcy proceeding, was completely preempted by federal
bankruptcy law and observed, inter alia, that "the adjustment of rights and duties within the

---

[2]    It appears that jurisdiction in Astor Holdings was not premised on 28 U.S.C.
§1334; the court addressed a number of additional state law claims on their
merits.

[3]    But see 28 U.S.C. §1334 (district courts have original exclusive jurisdiction of
bankruptcy cases, original non-exclusive jurisdiction of civil proceedings arising
under Bankruptcy Code or arising in or related to cases under Bankruptcy Code)
and 28 U.S.C. §157 (district court may provide that any or all bankruptcy cases or
any or all proceedings arising under Bankruptcy Code or arising in or related to
cases under Bankruptcy Code shall be referred to the bankruptcy judges for the
district).

bankruptcy process is uniquely and exclusively federal." Id., 74 F.3d at 914.  The MSR Court

held that the federal district court had jurisdiction to determine the preemption question.

Appellees respond that the question of preemption is a defense not properly before

the Court, in that Bank of America has expressed its claims purely in state law terms, and that the

claims that have been asserted are not preempted because they do not attack the integrity of the

bankruptcy filing itself or of actions taken within the bankruptcy proceeding, but rather simply

seek enforcement of the guarantors' obligations under their contracts.

The Bankruptcy Court rejected appellants' core jurisdiction arguments, holding

that the Bank of America case is one that presents merely standard contract issues not implicating

questions arising under the Bankruptcy Code, and that contract provisions precluding

indemnification claims by the guarantors against the Debtors rendered the guaranty claims

independent of any that Bank of America may have against the Debtors.  In re Extended Stay

Inc., 418 B.R. 49, 58 (S.D.N.Y. 2009).  Appellants' public policy arguments regarding the

springing nature of the guarantees as a disincentive to the exercise of rights granted by

bankruptcy law were rejected as of "minimal relevance" in light of the actual exercise of the

Debtors' rights.  Id. at 59.  The Bankruptcy Court further held that Bank of America's claims did

not "arise in" the bankruptcy case, since third-party guaranty claims do not exist solely in the

context of bankruptcy proceedings, and that the adversary proceeding is not "related to" the

Debtors' bankruptcy proceedings because the indemnity and offset preclusion provisions of the

guarantees insulate Debtors' estates from any "conceivable effect" of the outcome of the action.

Id. at 58.

Having reviewed these matters de novo, the Court concurs in the Bankruptcy

Court's determination that Bank of America's claims do not frame core "arising under" or "arising in" jurisdiction.  The claims are asserted in state law terms only; Bank of America seeks recovery pursuant to contracts in which the Defendant-Appellants agreed to backstop a specific liability under the relevant circumstances.  Bank of America does not seek to invoke common law or other extraneous doctrines to label wrongful, or punish, the exercise of rights under the Bankruptcy Code, nor does it question the legal validity or propriety of the Debtors' filings.  As the Ninth Circuit recognized in MSR, "preemption assertions are normally matters of defense and will not suffice to establish federal jurisdiction."  Id., 74 F.3d at 912.  Unlike the plaintiff in that case, which "self-consciously and entirely . . . [sought] damages for a claim filed and pursued in bankruptcy court," id., Bank of America seeks the enforcement of contractual obligations.  Appellants' arguments concerning the invalidity of the reference obligation by which the contracts define the guarantors' obligation (i.e., that the underlying obligations of the Debtors are void because of Bankruptcy Code policy disfavoring "ipso facto" clauses, as exemplified by section 365(e)(1)(B) of the Code) are likewise insufficient, in that they are mere defenses, to establish that Bank of America's claims here are preempted by or otherwise arise under the Bankruptcy Code.

Furthermore, after the preemption decisions relied upon by appellants, and following the Supreme Court's most recent decision regarding complete preemption (see Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003)), the Second Circuit clarified its jurisprudence regarding the relationship between the preemptive effect of federal statutes and jurisdiction premised on such preemption.  In Sullivan v. American Airlines, Inc., 424 F.3d 267 (2d Cir. 2005), the Circuit traced a careful demarcation between ordinary preemption, including

field preemption – the doctrine of preemption under which a plaintiff's state law claim may be defeated because "federal law 'occupies the field' within which the state-law claim falls" – and "complete preemption, which creates federal subject matter jurisdiction over preempted state-law claims." See id. at 273 and n.7.  Ordinary preemption, even when it eviscerates a state law claim, does not provide a basis for federal court jurisdiction of the state law claim, and "a plaintiff's suit does not arise under federal law simply because the defendant may raise the defense of ordinary preemption." Id. at 273.  Recognizing that the Supreme Court has itself characterized the only areas in which it has found complete preemption as those in which "'the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action,'"[4] the Sullivan Court examined whether the statute at issue in that case – the Railway Labor Act's ("RLA") provisions regarding the resolution of "minor disputes" – supported complete preemption.  The Sullivan Court found complete preemption lacking, in that the RLA made no provision for the pursuit of minor disputes in federal court as a matter of original jurisdiction (instead, the RLA places primary jurisdiction of such disputes in statutorily-created adjustment boards).  Where the defendant sought to have the plaintiff's claim found preempted and dismissed for lack of subject matter jurisdiction, and the district court had no power to adjudicate the merits of the claim under the RLA, the doctrine of complete preemption provided no basis for jurisdiction.[5]  The Sullivan Court's analysis leads

---

[4]      Sullivan, 424 F.3d at 275, quoting Beneficial Nat'l, 539 U.S. at 8.

[5]      The Second Circuit distinguished the RLA in this respect from the Labor Management Relations Act, Employee Retirement Income Security Act and National Bank Act provisions that the Supreme Court has held effect complete preemption: the district court has statutory authority to adjudicate on the merits the labor contract, benefit and usury claims that are preempted by those statutes.

here to the conclusion that the preemption arguments upon which appellants rely are insufficient to support the proposition that appellants' claims are so completely preempted by the Bankruptcy Code as to render Bank of America's state law claims ones that effectively "arise under" the Bankruptcy Code so as to provide federal jurisdiction of the removed action.  Appellants do not proffer that the Code provides a cause of action for enforcement of the guarantees here at issue.  Rather, they argue that the guarantees are void as a matter of Bankruptcy Code policy and that the contract claims asserted here cannot be adjudicated for that reason.  Appellants present, at best, an argument for ordinary field preemption, and their assertion that Bank of America's claims "arise under" the Bankruptcy Code fails.

        The Court concurs with the Bankruptcy Court's determination that Bank of America's claims do not "arise in" Debtors' bankruptcy cases, for substantially the reasons stated in the Bankruptcy Court Decision.  See In re Extended Stay, Inc., 418 B.R. at 58.

        The Bankruptcy Court did, however, err in its determination that it lacked "related to" jurisdiction of Bank of America's claims because they could have no conceivable effect on Debtors' estates.  In reaching this conclusion, the Bankruptcy Court focused narrowly on the guaranty provisions eschewing indemnity claims or offset rights as against the Debtors in connection with the enforcement of the guarantees.  Appellants assert, however, that a provision of the Intercreditor Agreement permits Bank of America to make a claim against the Debtors for indemnification for expenses that it incurs in connection with this litigation, and further assert that Appellees' collection on the guarantees could at least as a technical matter affect distribution of the estates in bankruptcy due to Intercreditor Agreement provisions adjusting the rights of

---

        Id., 424 F.3d at 277.

various classes of debt holders in the event that they receive compensation other than in

accordance with the distribution scheme that would apply absent such collection.  However

unlikely it might be that there will be sufficient value in the estate to provide for actual

distributions that could be affected by such adjustments, the prospect of an effect on distributions

is conceivable and is, with the potential for an indemnity claim by Bank of America, sufficient to

render Bank of America's adversary proceeding "related to" Debtors' bankruptcy proceedings

within the meaning of 28 U.S.C. §1334(b).  The Bankruptcy Court thus had jurisdiction of Bank

of America's claims.  That jurisdiction was not, however, exclusive.  Revocation of the remand

order is not, therefore, compelled.  Indeed, as explained below, abstention from adjudication of

the claims and defenses raised here is mandatory.

*Line Trust v. Lichtenstein Adversary Proceeding*

Plaintiffs-Appellees Line Trust and Deuce Properties LTD (collectively, the "Line

Trust Plaintiffs"), which hold G-tranche Mezzanine debt, commenced this action in New York

State Supreme Court on June 24, 2009, asserting state law tort causes of action against

defendants Lichtenstein, Lightstone, Bank of America, Cerberus, Centerbridge and others, as

well as contract claims based on the guarantees given by Lichtenstein and Lightstone in

connection with the G-tranche of the Mezzanine Loans.  None of the Debtors is a Defendant.

The action was removed on July 8, 2009, and, in the Bankruptcy Court Decision, the Bankruptcy

Court granted Appellees' motion to remand the action to state court.

The Bankruptcy Court found that the claims plead in the Line Trust Plaintiffs'

complaint were not core and that they were not "related to" the Chapter 11 proceedings in that

their outcome could have no conceivable effect on those proceedings.  Appellants contend that

both determinations were erroneous.

The tort-based claims in the <u>Line Trust</u> action arise from the bankruptcy-remote aspects of the Extended Stay financing arrangements.  Appellees contend that the bankruptcy filings violated the spirit, if not the letter, of the many contractual disincentives to use of the bankruptcy remedy, and that the proposed reorganization plan term sheet filed with Debtors' positions includes measures designed to blunt or negate the impact of the disincentives (Appellees focus in particular on the term sheet's indemnification provisions for guaranty liability and related litigation expenses).  Characterizing such term sheet provisions as "Fraudulent Bankruptcy Incentives," Line Trust not only seeks to recover on guarantees delivered in connection with Mezzanine Loans, but also sues non-guarantor parties to the Intercreditor Agreement and others, asserting that they are liable for damages on various tortious interference, fiduciary and collusion theories for "inducing" Lichtenstein to take the Debtors into bankruptcy, breaching and/or procuring the breach of covenants in financing documents and the implied covenant of good faith and fair dealing, and/or aiding and abetting Lichtenstein's alleged breach of fiduciary duty.  The Line Trust Plaintiffs also assert damages claims against Lichtenstein for breach of fiduciary duty.  There is no claim that the filing of the bankruptcies was wrongful under the Bankruptcy Code.  Rather, the gravamen of the Line Trust Plaintiffs' tort claims is the alleged violation of contractual and state law duties to continue or consummate arrangements outside of bankruptcy under which Line Trust and its creditor peers could have received more favorable treatment than they appear likely to see in bankruptcy.  The Bankruptcy Court remanded the adversary proceeding to state court, finding no basis for Bankruptcy Court jurisdiction.  <u>Extended Stay</u>, 418 B.R. at 60.

Appellants, focusing particularly on the tort-based claims against non-guarantors and arguments, similar to those raised in the Bank of America action, that Bankruptcy Code preemption of appellees' state causes of action is sufficient to render Line Trust's claims ones that "arise under" the Bankruptcy Code, assert that the Bankruptcy Court erred in rejecting their arguments for core jurisdiction.  Citing a number of decisions in which malpractice claims regarding the services of attorneys and accountants in the course of chapter 11 cases have been held to be encompassed by the core jurisdiction provisions of the Bankruptcy Code, appellants further argue that the tort claims "arise in" Debtors' bankruptcy cases.

Appellants' preemption-based "arising under" arguments fail for the reasons discussed above in connection with the Bank of America adversary proceeding.  Nor do appellants fare better with respect to "arising in" jurisdiction.  Appellants' reliance on the professional malpractice cases is misplaced.  As is demonstrated by the Second Circuit's recent decision in one such case, Baker v. Simpson, No. 09-3848-bk, 2010 WL 2977329 (2d Cir. July 30, 2010), "arising in" jurisdiction of a professional malpractice case turns on court appointment of the professional and the interrelationship of the alleged malpractice with the court's supervision of the professional and the integrity of the administration of the case.  See id. at *3-4. No such concerns are implicated here.  The Line Trust Plaintiffs complain of actions taken by non-debtors prior to the commencement of bankruptcy proceedings.  Their contentions that the formulation of those provisions prior to the bankruptcy filings violated contractual or common-law duties among the creditors as such does nothing to demonstrate a connection with the bankruptcy process from which "arising in" jurisdiction could derive.  Accordingly, the Bankruptcy Court lacked core "arising in" and "arising under" jurisdiction of Line Trust's claims

in the removed adversary proceeding.

Finally, for the reasons explained above in connection with the <u>Bank of America</u> adversary proceeding, the Bankruptcy Court erred in its determination that the claims raised in <u>Line Trust</u> are not "related to" the Extended Stay bankruptcy proceedings insofar as their outcome could at least technically affect the distributions to which Extended Stay's creditors are entitled from Debtors' estates and result in expense indemnification claims against the estates.

*Abstention*

Section 1334(c) of Title 28 mandates lower federal court abstention from hearing "a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section . . . if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."  28 U.S.C.A. §1334(c)(2) (West 2006).  The court has permissive authority to refrain from hearing proceedings arising under title 11, or arising in or related to title 11 matters, in the interests of justice or in the interests of comity or out of respect for state law. 28 U.S.C.A. §1334(c)(1) (West 2006).

The Bankruptcy Court did not reach the question of abstention, given its finding that it had no jurisdiction of the claims in <u>Bank of America</u> and <u>Line Trust</u>.  The parties did, however, brief the issues of both permissive and mandatory abstention to both the Bankruptcy Court and this Court and there are no disputed issues of fact precluding resolution of the abstention question by this Court.  Because both the <u>Bank of America</u> and <u>Line Trust</u> proceedings were commenced timely in a state forum of appropriate jurisdiction, there is nothing

in the record to indicate that they cannot be timely adjudicated there (indeed, litigation has
proceeded in the state court since the Bankruptcy Court Decision and Appellants' contentions that
federal court resolution of their preemption arguments is a precondition to adjudication of the
state claims fails for the reasons stated above) and the record indicates no non-bankruptcy basis
for federal jurisdiction of either of the adversary proceedings, abstention is mandated.
Accordingly, the Bankruptcy Court's order remanding the Bank of America and Line Trust
decisions will be affirmed.

## CONCLUSION

The Bankruptcy Court Orders from which the above-captioned appeals have been
taken are affirmed, and the Bankruptcy Court's Memorandum Decision is affirmed except to the
extent it holds that the Bankruptcy Court lacked "related to" jurisdiction of the Bank of America
and Line Trust adversary proceedings.  The Clerk of Court is respectfully requested to enter this
Opinion and Order in each of the above-captioned civil actions and close each case.

SO ORDERED.

Dated: New York, NY
       September 7, 2010

LAURA TAYLOR SWAIN
United States District Judge